## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 19-** |
| | : | |
| **v.** | : | **UNDER SEAL** |
| | : | |
| **MARLON MEADE** | : | **18 U.S.C. § 371 (Conspiracy);** |
| | : | **18 U.S.C. § 1341 (Mail Fraud);** |
| **Defendant.** | : | **18 U.S.C. § 1957 (Monetary Transactions);** |
| | : | **18 U.S.C. § 2 (Aiding and Abetting and** |
| | : | **Causing an Act to be Done).** |
| | : | |
| | : | **Criminal Forfeiture:** |
| | : | **18 U.S.C. § 981(a)(1)(C),** |
| | : | **28 U.S.C. § 2461(c), and** |
| | : | **21 U.S.C. § 853(p).** |

## I N F O R M A T I O N

The United States informs the Court:

### Background

At all times material to this Information:

1. The defendant MARLON MEADE was an investor purchasing real estate properties in the District of Columbia, and at times operated under the name "South Mountain Development LLC."

2. Dominion Financial Services, LLC ("Dominion") and Boardwalk 2001, LLC, ("Boardwalk") were private lenders (collectively referred to as "the lenders") in the business of loaning money to real estate investors who primarily bought distressed properties in order to rehabilitate, and then resell, the properties at a profit. In order to assess the risk of the loan, the lenders required the borrower, or the one guaranteeing the repayment of the loan, to provide proof of assets, in the form of filed IRS Forms 1040 Tax Returns and/or bank statements of accounts showing sufficient available cash to fund the settlement and rehabilitation costs. If the lenders were assured that the loan would be repaid and there were sufficient funds for settlement and

1

renovation, then they loaned the money for the real estate purchase. Typically, the lenders charged a higher rate of interest than mortgage companies or banks, and the loans were intended to be shorter in duration than typical home-owner mortgages.

3. If the lender approved the loan, then the borrower proceeded toward settlement, which was a process handled by a title and escrow company ("settlement company"). The lender provided the settlement company with instructions on how to secure its interest in the loan and transferred the loan proceeds to the settlement company for disbursements consistent with the sales contract. At settlement, the borrower signed the Settlement Statement (accounting of funds transferred for the sale of the property) and Deed of Trust (promise to pay the loan and public notice that the property was encumbered with a mortgage loan), among other documents.

4. After closing, the settlement company submitted the Deed (transferring the ownership of the property), Deed of Trust, and any other filings to the District of Columbia's Recorder of Deeds (if the property were in the District of Columbia), with instructions that the Recorder of Deeds officially record the documents in the public records and then send to the lender or settlement company the stamped recorded documents as proof that the documents were filed as required by the lender.

5. Settlement Company 1 was a settlement company located in the District of Columbia.

6. Settlement Company 2 was a settlement company located in Maryland.

7. Person 1 was a loan broker earning money by coordinating loans for real estate investors from private lenders.

8. Person 2 was a Certified Public Accountant and an income tax preparer.

9. Person 3 was a settlement agent at Settlement Company 1.

2

## COUNT ONE
**(Conspiracy)**

10. Paragraphs 1 through 9 are hereby realleged as if fully set forth herein.

### The Conspiracy

11. From at least in or about October 2014, and continuing thereafter through at least in or about June 2015, in the District of Columbia and elsewhere, defendant MARLON MEADE did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree with persons both known and unknown to the government to commit offenses against the United States, that is:

a.      mail fraud, by engaging in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused to be delivered mail matter, in violation of 18 U.S.C. § 1341;

b.      monetary transactions, by engaging in transactions, by, through, and to a financial institutions, affecting interstate commerce using criminally derived property of a value greater than $10,000, that was derived from a specified unlawful activity, that is, wire fraud and mail fraud (18 U.S.C. §§ 1343 and 1341) in violation of 18 U.S.C. § 1957.

### Goal of the Conspiracy

10. It was a goal of the conspiracy that the conspirators would use materially false and fraudulent documents and statements in order to obtain real estate property loans which were not repaid in full, and take lender proceeds and the purchased real estate to enrich themselves.

### Manner and Means

It was a part of the conspiracy that:

11. Defendant MARLON MEADE and others submitted inflated Personal Financial Statements, altered bank account statements, and false IRS Forms 1040 Tax Returns to private lenders in an attempt to trick the lenders into loaning in excess of $5.6 million in loans for the purchase of real estate properties in the District of Columbia.  Defendant MARLON MEADE and

others falsely represented the sales price to obtain excess lender funds in order to recycle the lender's own money as the buyer's down-payment and to siphon off funds for their own enrichment. The conspirators and others generally failed to repay the loans and the properties fell into foreclosure for a loss to the lenders.

12. Using false statements and forged documents, defendant MARLON MEADE and others obtained lender funding, and attempted to obtain lender funding, as listed below:

| Property Address | Date (in or about) | Amount of Loan | Primary Lender | Borrower(s) / Guarantor(s) | Title and Escrow Company |
|---|---|---|---|---|---|
| 1017 17th St, NE Washington, DC | October 2014 | $612,000 | Dominion | B.A. | Settlement Company 1 |
| 1541 9th St, NW Washington, DC | December 2014 | $925,000 | Dominion | MEADE | Settlement Company 1 |
| 1541 9th St, NW Washington, DC (second sale) | June 2015 | $1,050,000 | Boardwalk | J.C. | Settlement Company 1 |
| 2005 and 2009 M St, NE Washington, DC | February 2015 | $1,440,000 | Dominion | MEADE (borrower) P.D. (guarantor) | Attempt |
| 2019 M St, NE Washington, DC | February 2015 | $445,000 | Boardwalk | MEADE (borrower) C.T. (guarantor) | Settlement Company 2 |
| 5539 Bass Pl, SE Washington, DC | April 2015 | $80,000 | Dominion | J.C. | Attempt |
| 608 Girard St, NE Washington, DC | October 2014 | $1,160,000 | Dominion | MEADE (borrower) C.T. (co-borrower) | Attempt |

## Overt Acts

In furtherance of the conspiracy and to effect the object thereof, defendant MARLON MEADE, along with other members of the conspiracy, committed the following overt acts, among others,

on or about the dates listed below in the District of Columbia and elsewhere:

<strong>1017 17th Street, NE</strong>

13. On October 14, 2014, Person 1, on behalf of borrower B.A., emailed Dominion requesting a loan of $612,000 for the purchase of 1017 17th Street, NE, Washington, D.C. ("1017 17th Street, NE).

14. On October 14, 2014, in response to Dominion's request for filed IRS Forms 1040 Tax Returns, bank statements, and paystubs, Person 1 emailed Dominion a Personal Financial Statement, under B.A.'s name, falsely representing that B.A. maintained a cash balance of $455,000 in Navy Federal Credit Union and $340,000 in M&T Bank, and an altered Navy Federal Credit Union statement falsely showing a total account balance of $462,000.20, when in truth B.A.'s balance for the same time period at Navy Federal Credit Union was $5.20, and B.A. did not maintain any account at M&T Bank.

15. On October 15, 2014, Person 1 emailed to Dominion IRS Forms 1040 Tax Returns prepared by Person 2 falsely representing B.A.'s income.

16. On October 20, 2014, in the District of Columbia, Settlement Company 1 and Person 3 settled the transaction for 1017 17th Street, NE, after receiving the loan proceeds of $612,000 from Dominion on behalf of borrower B.A., and sent $6,120 to Person 1 as a "broker's fee," $114,391.04 to defendant MARLON MEADE or his creditors, and used another portion of the loan proceeds to fund the buyer's down-payment.

17. Between October 22, 2014, and October 28, 2014, in the District of Columbia, Settlement Company 1 caused an executed Deed of Trust to be filed at the District of Columbia's Recorder of Deeds, with the instructions that after the recordation of the deed, the Recorder of Deeds should mail the stamped documents back to Settlement Company 1.

18. On October 28, 2014, in the District of Columbia and elsewhere, the District of Columbia's Recorder of Deeds mailed the file-stamped copy of the Deed of Trust, referenced above, to Settlement Company 1.

### 608 Girard Street, NE (Attempt)

19. On October 28, 2014, defendant MARLON MEADE emailed Person 1 M&T Bank statements which falsely showed him (MEADE) with an account balance of over $630,000, when in truth defendant MARLON MEADE held no bank account with M&T Bank.  That same day, Person 1 sent these false M&T Bank statements to Dominion along with a loan request for defendant MARLON MEADE to borrow $1,160,000 for the purchase of 608 Girard Street, NE, Washington, D.C. ("608 Girard Street, NE").

20. On October 28, 2014, Person 1 emailed Dominion copies of IRS Forms 1040 Tax Returns prepared by Person 2, falsely representing defendant MARLON MEADE's income.

21. On November 3, 2014, Person 1 emailed Dominion explaining that the "Girard deal" included a co-borrower, identified here as "C.T."

22. On November 4, 2014, defendant MARLON MEADE emailed to Person 1 a Navy Federal Credit Union statement for C.T. falsely showing a total account balance of $286,010.13, when in truth C.T. held no accounts at Navy Federal Credit Union.  Later that same day, defendant MARLON MEADE emailed to Person 1 another version of the same account statement under the email subject line of "USE THIS ONE," and then another email attaching a third version with the subject line "Here you go – This is the real final."  Person 1 then emailed Dominion with the third version of the account statement.

### 1541 9th Street, NW

23. While the 608 Girard Street, NE, loan request was pending, defendant MARLON MEADE

emailed Dominion seeking a loan, to be guaranteed by C.T. for the purchase of 1541 9th Street, NW, Washington, D.C. ("1541 9th Street, NW").

24. On December 15, 2014, in the District of Columbia, Settlement Company 1 and Person 3 settled the transaction for 1541 9th Street, NW, after receiving the loan proceeds of $925,000 from Dominion, and sent $20,500 to Person 1 as a "broker's fee," $53,473.52 to defendant MARLON MEADE or his creditors, and used another portion of the loan proceeds to fund the buyer's down-payment.

25. Between December 15, 2014, and December 31, 2014, in the District of Columbia, Settlement Company 1 caused an executed Deed of Trust to be filed at the District of Columbia's Recorder of Deeds, with the instructions that after the recordation of the deed, the Recorder of Deeds should mail the stamped documents back to Settlement Company 1.

26. On December 31, 2014, in the District of Columbia and elsewhere, the District of Columbia's Recorder of Deeds mailed the file-stamped copy of the Deed, referenced above, to Settlement Company 1.

### 1541 9th Street, NW (second sale)

27. On March 27, 2015, without renovating the property, defendant MARLON MEADE agreed to sell 1541 9th Street, NW, to an individual identified here as J.C., through J.C.'s company for $200,000 more than he (defendant MARLON MEADE) paid to buy the property three months earlier.

28. On April 21, 2015, Person 1 emailed an agent of Boardwalk seeking a loan for J.C., falsely representing that J.C. held "over $500K in the bank" and made "$300K [$300,000] last year."

29. On May 20, 2015, defendant MARLON MEADE sent Person 1 an email with the subject listed as "Statements for 1941 9th Street;" the attachments consisted on account statements from

Navy Federal Credit Union falsely showing that J.C. a total account balance of approximately $500,000, when in truth J.C.'s balance at Navy Federal Credit Union ranged between $20 and $700.

30. On June 11, 2015, in the District of Columbia, Settlement Company 1 and Person 3 settled the transaction for 1541 9th Street, NW, after receiving the loan proceeds of $1,050,000 from Boardwalk on behalf of borrower J.C., through his company, paying off the previous loan defendant MARLON MEADE obtained from Dominion.

31. On June 15, 2015, Settlement Company 1 sent $134,011.48 of the loan proceeds to a bank account controlled by Person 1, $83,169.62 to defendant MARLON MEADE or his creditors, and used another portion of the loan proceeds to fund the buyer's down-payment.

32. Between June 11, 2015, and June 16, 2015, in the District of Columbia, Settlement Company 1 caused an executed Deed of Trust to be filed at the District of Columbia's Recorder of Deeds, with the instructions that after the recordation of the deed, the Recorder of Deeds should mail the stamped documents to the lender, Boardwalk.

33. On June 16, 2015, in the District of Columbia and elsewhere, the District of Columbia's Recorder of Deeds mailed the file-stamped copy of the Deed of Trust, referenced above, to the lender, Boardwalk.

**2019 M Street, NE**

34. In December 2014, defendant MARLON MEADE sought a loan from Boardwalk to purchase 2019 M Street, NE, Washington, D.C. ("2019 M Street, NE") with C.T. to be the guarantor on the loan.

35. On December 29, 2014, in response to Boardwalk agent's request for defendant MARON MEADE's and C.T.'s bank statements and tax information, defendant MARLON MEADE

8

emailed the agent M&T Bank statements which falsely showed him with an account balance in excess of $136,000, and the next day emails Navy Federal Credit Union statements which falsely showed C.T. with an account balance of $385,382.13, when in truth defendant MARLON MEADE held no account with M&T Bank and C.T. held no account with Navy Federal Credit Union.

36. On February 6, 2015, Settlement Company 2 settled the transaction for 2019 M Street, NE, after receiving the loan proceeds of $445,000 from Boardwalk, with defendant MARLON MEADE paying $10,750 to Person 1 as a "broker's fee."

37. On February 6, 2015, defendant MARLON MEADE caused Settlement Company 2 to transfer $157,416.58 from the loan proceeds to a bank account managed by him.

38. Between February 6, 2015, and February 12, 2015, in the District of Columbia, Settlement Company 2 caused an executed Deed of Trust to be filed at the District of Columbia's Recorder of Deeds, with the instructions that after the recordation of the deed, the Recorder of Deeds should mail the stamped documents back to the lender, Boardwalk.

39. On February 12, 2015, in the District of Columbia and elsewhere, the District of Columbia's Recorder of Deeds mailed the file-stamped copy of the Deed, referenced above, to the lender, Boardwalk.

### 2005 and 2009 M Street, NE (Attempt)

40. On February 18, 2015, Person 1 emailed Dominion requesting a loan in order for defendant MARLON MEADE and an individual identified here as P.D. to purchase 2005 and 2009 M Street, NE, Washington, DC ("2005/2009 M Street, NE") for $1.6 million. Person 1 attached to the email an altered Navy Federal Credit Union statement falsely showing that P.D. held an account balance in excess of $604,000, when in truth P.D.'s balance for the same time period at Navy Federal Credit Union was $18. Person 1 also attached 2013 and 2014 IRS Form 1040 Tax Returns prepared

by Person 2, falsely representing P.D.'s income.

**(Conspiracy to Commit Wire Fraud, Mail Fraud, and
Monetary Transactions, in violation of
Title 18, United States Code, §§ 371, 1343, 1341, and 1957).**

## FORFEITURE ALLEGATION

41. Upon conviction of any of the offenses alleged in Count One of this Information, the

defendant MARLON MEADE shall forfeit to the United States any property, real or personal,

which constitutes or is derived from proceeds traceable to these offenses, pursuant to 18 U.S.C. §

981(a)(1)(C) and 28 U.S.C. § 2461(c). The United States will also seek a forfeiture money

judgment against the defendant equal to the value of any property, real or personal, which

constitutes or is derived from proceeds traceable to these offenses.

42. If any of the property described above as being subject to forfeiture, as a result of

any act or omission of the defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the Court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property that cannot be divided without

            difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the

value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code,
Sections 981(a)(1)(C), Title 28, United States Code, Section 2461(c),
and Title 21, United States Code, Section 853(p)).**

JESSIE K. LIU

United States Attorney
for the District of Columbia


By:     _____
        VIRGINIA CHEATHAM
        Assistant United States Attorney
        DC Bar # 411980
        Virginia.cheatham@usdoj.gov
        United States Attorney's Office
        Fraud and Public Corruption Section
        555 4th Street, N.W., Room 5836
        Washington, D.C.  20530
        (202) 252-7820